PANYARD MACHINE & MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20341. Promulgated October 24, 1929.

*Albert W. Torbet, C. P. A.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

1054

OPINION.

Van Fossan: Two questions are presented—first, the interpretation of the payment of $25,000 under the agreements of April 14, 1923, and May 2, 1923, and, second, the allowability of a deduction of a reserve for bad debts.

By interpretive reference to the contracts involved, it appears that petitioner acquired thereby all of the partnership assets, tangible and intangible. For the tangibles it agreed to pay the inventory cost less discounts; for the intangibles it paid $25,000. Petitioner's sole witness said the additional sum was a bonus "to get them out of the way." It appears to be more than that. It was for the acquisition of whatever in addition to tangibles the partnership possessed. Among these was the exclusive contract right originally granted to

Kelly to sell petitioner's product. That this right was an asset of permanent value to petitioner needs no demonstration. Petitioner also acquired the business organization, sales contracts with distributors and users of the product, and such good will as was inherent in the business. To protect this good will from encroachment a covenant was made forbidding the members of the partnership from engaging in the same business for a period of two years. All of these acquisitions were of a capital nature. It follows that the payment of $25,000 was not deductible as an expense in 1923.

The testimony in support of the reserve for bad accounts was vague and uncertain. So far as figures appeared, they were the barest approximations and estimates. There is no specific evidence of the efforts, if any were made, to collect or of the worth of the customers. A careful study of the evidence fails to produce a conviction either as to the fact of worthlessness of the several accounts or of the reasonableness of the amount set up as a reserve. A reserve for bad debts can not serve to screen the failure to determine the actual worthlessness of the debts or to establish with fair precision the correctness of the amount of the reserve.

*Decision will be entered for the respondent.*